12 CIV 2105

RECEIVED
MAR 21 2012
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JERMAINE HARRISON and
LATRICE DAVIS,

                    Plaintiffs,

      -against-

THE CITY OF NEW YORK, DEXTER
POWERS, and JOHN and JANE DOES 1-10,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

        Plaintiffs, Jermaine Harrison and Latrice Davis, by their attorneys, Reibman &
Weiner, as and for their Complaint, hereby allege as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

       1.    At all times hereinafter mentioned, plaintiff Jermaine Harrison, was an
adult male resident of Bronx County, within the State of New York.

       2.    At all times hereinafter mentioned, plaintiff Latrice Davis, was an adult
female resident of Bronx County, within the State of New York.

       3.    At all relevant times hereinafter mentioned, defendant City of New
York ("New York City"), was and is a municipal corporation duly organized and existing
under and by virtue of the laws of the State of New York and acts by and through its
agencies, employees and agents, including, but not limited to, the New York City Police
Department ("NYPD"), and their employees.

       4.    At all relevant times hereinafter mentioned, defendant Dexter Powers
(Tax 902222), was an adult male employed by the City of New York as a member of the

NYPD.  Powers is sued herein in his official and individual capacities.

5.    At all relevant times hereinafter mentioned, defendants John and Jane Does 1-10, were individuals employed by the City of New York as members of the NYPD whose identities are unknown.  The Doe defendants are sued herein in their official and individual capacities.

6.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7.    Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Southern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

8.    On March 4, 2010, at about 10:00 a.m., plaintiff Harrison was lawfully present inside of his residence located at 750 Bryant Avenue, Apt. 5E, Bronx, NY, 10474 (the "premises").

9.    Plaintiff Davis is the tenant of record for the premises and also resides therein.

10.    At or about that time, the defendants forcibly entered the premises with guns drawn, and ordered plaintiff Harrison on the floor.

11.    Defendant Powers and at least some of the Doe Defendants are narcotics officers assigned to Narcotics Borough Bronx.

12.    The defendants were not invited into the premises nor was their entry

consented to by either of the plaintiffs, or any other individual authorized to so consent.

13.     There were no exigent circumstances present that would permit defendants to enter the premises absent a warrant or invitation.

14.     The defendants did not display a warrant to justify their entry into the premises and refused to produce one after plaintiff Harrison asked.

15.     If indeed a warrant had issued, it could only have been procured on false or otherwise misleading information as none of the residents of the apartment had engaged in any conduct that would have constituted probable cause for the issuance of a warrant to enter or search the premises.

16.     Plaintiff Harrison was not engaged in any unlawful or suspicious activity, and complied with defendants' requests.

17.     Although there was no legal basis to enter the premises, detain, or seize the plaintiff, defendants placed Harrison in handcuffs, and searched the premises.

18.     The defendants ransacked plaintiffs' premises, destroying furniture and personal property in the process.  This search yielded no evidence of guns, drugs, or contraband, or any evidence of criminal activity on the part of plaintiffs.

19.     Despite the absence of any evidence of wrongdoing on the part of plaintiffs, the defendants formally arrested plaintiff Harrison.

20.     Plaintiff Harrison was subjected to excessive force and excessively tight handcuffs by defendants, requiring plaintiff to seek medical treatment at St. Luke's Emergency Department following his arrest.

-3-

21.     The decision to arrest plaintiff was objectively unreasonable under the circumstances.

22.     Plaintiff was then transferred to a local area precinct where he was held for a number of hours before he was given a desk appearance ticket, released, and required to return to court at a later date.

23.     Eventually, the criminal court dismissed all of the charges against the plaintiff, and the prosecution was terminated in his favor.

24.     During plaintiff Harrison's time in custody, plaintiff Davis returned home from work to find her home destroyed and strangers in her home.  She asked the defendants to leave, and when she went down to a local precinct to inquire about the police presence in her home, she was turned away.

25.     Distraught and terrified, plaintiff Davis called "911" to report plaintiff Harrison missing.  Upon information and belief, police came to her apartment, informed her that they had a warrant and that they took plaintiff Harrison, but never showed plaintiff Davis a warrant.

26.     The factual allegations sworn to by defendants against plaintiff Harrison were materially false and deliberately made to justify the illegal entry into the premises, searches of plaintiff's person and plaintiffs' property, and arrest of plaintiff Harrison.

27.     At no time did there exist sufficient cause to seize or arrest plaintiff Harrison or to search plaintiffs' apartment, nor could the defendants have reasonably

believed that such cause existed.

28.     At no time did there exist any basis to utilize any level of force against the plaintiff, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

29.     The factual allegations made by defendants against plaintiff Harrison to support the desk appearance ticket were materially false and deliberately made to justify the illegal entry into the premises, searches, and arrest of plaintiff Harrison.

30.     At no time did defendants take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against the plaintiffs.

31.     The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

32.     That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

33.     Plaintiffs repeat the allegations contained in paragraphs "1" through "32" above as though stated fully herein.

34.     Defendants willfully and intentionally seized, searched, detained, and arrested plaintiff Harrison without probable cause, and without a reasonable basis to believe

such cause existed.

35.     At no time did defendants have any legal basis for arresting or imprisoning plaintiff Harrison, commencing criminal process, maliciously prosecuting, or using physical force against him, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

36.     Defendants willfully and intentionally subjected plaintiff Harrison to physical force in excess of what was reasonable under the circumstances and caused plaintiff to suffer physical injuries, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary.

37.     Defendants knowingly and deliberately entered and searched plaintiffs' home without any lawful authority and without a reasonable basis to believe such authority existed.

38.     By so doing, the individual defendants, individually and collectively, subjected plaintiff Harrison to false arrest and imprisonment, excessive force, unlawful searches of person, malicious prosecution, and subjected plaintiffs to unlawful searches of property, and denial of due process, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

39.     The defendants further failed to intervene in the aforementioned misconduct in which their fellow defendants engaged by remaining silent, and failing to take any meaningful steps to correct the defendants' actions, or otherwise protect the plaintiffs

from the defendants' actions

40.　　By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff Harrison to suffer physical injury, incarceration and the deprivation of liberty, and both plaintiffs to suffer emotional injuries, mental anguish, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

41.　　Plaintiffs repeat the allegations contained in paragraphs "1" through "40" above as though stated fully herein.

42.　　Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

43.　　Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD.  Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiffs herein.

44.　　The defendant City of New York deliberately and intentionally chose

-7-

not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

        45.    All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

        46.    The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a.    Using excessive force on individuals, including but not limited to those who have already been handcuffed;

    b.    Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    c.    Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

    d.    Retaliating against officers who report police misconduct; and

    e.    Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

47.   The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

a.   *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

b.   *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

c.   *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

d.   *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

e.   *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

f.   *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

g.   *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.);

h.   *Carmody* v. *City of New York,* 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207;

i.   *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

j.   *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

k.   *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

l.   *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

m.   *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

n.   *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

o.   *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP)

(E.D.N.Y.);

    p.    *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

    q.    *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

    r.    *White-Ruiz v. The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

    s.    *Ariza v. City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

48.    In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

49.    Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

50.    It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of

plaintiffs' rights in particular.

51.     By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## THIRD CAUSE OF ACTION

52.     Plaintiffs repeat the allegations contained in paragraphs "1" through "51" above as though stated fully herein.

53.     The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

54.     More precisely, under this policy or plan, officers within the Narcotics Bureau, including the individual defendants, would secure warrants to search social clubs, apartments, and other locations, and, if any contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges.  The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

55.     The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

56.     In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria.  Thus, members of the Narcotics Bureau

routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

57. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest and illegal entry into plaintiffs' home, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests and illegal searches or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting officers often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

58. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

59. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

-12-

60.    Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

61.    By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i.    on the causes of action one through three, actual and punitive damages in an amount to be determined at trial;

ii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iii.    such other relief as the Court deems just and proper.

Dated:    Brooklyn, New York
March 18, 2012

By:    Reibman & Weiner
Attorneys for Plaintiffs
26 Court Street, Suite 1808
Brooklyn, New York 11242
718-522-1743

Jessica Massimi, Esq. (JM-2920)